25-13-80 Elizabeth Ferguson v. Metlife Investors USA Insurance Company Oral argument not to exceed 15 minutes per side Mr. Kutensky for the plaintiff appellant. Good morning. Good morning may it please the court Adam Kutensky on behalf of appellant and plaintiff Liz Ferguson. The issue in this case is whether or not an insurance company can bypass the equitable process of balancing equities and unilaterally rescind an insurance policy to the detriment of an innocent third party despite the Michigan Supreme Court having held that if you seek the remedy of rescission you must go through the Is your client Elizabeth Ferguson an innocent third party or is she a beneficiary under the contract? She is a beneficiary under the contract. Isn't that different than an innocent third party? Well I guess I suppose that would be how you define innocent third party. She's part of the beneficiary. The the insured can almost always commit fraud and the policies would almost always be paid unless the beneficiary actually knows that the insured has committed the fraud and that's really not the way life insurance policies have worked has it? Well I mean if ultimately when when you do the balancing or let's say you apply the Markman factors that counts for those things. If you have for instance a situation like this where a woman was involved in a motor vehicle accident and she had paid for this policy. To make her mother the beneficiary? That's correct. Now I'm just saying the way this has worked in practice is almost every life insurance policy would be paid despite fraud misrepresentation because very rarely would the beneficiary know about it. Theoretically that could apply to any type of insurance policy. Okay can you cite any cases that have applied this equitable balancing in a life insurance contract setting? Well this equity this equitable balancing test was established under the Mimic excuse me the the Bozzi the Sentinel case which is a relatively recent case and it although it's based upon equitable principles that go back to the you know the the 1800s it was clear it was basically a clarification of the Titan v Heighton case. Okay to answer the question I mean that is a no-fault case but you can't cite to us life insurance contract case that the equitable balancing has been applied? No I can't absolutely cannot. Anywhere in the country? Well that this is the Michigan Supreme Court which is the highest court in Michigan. Is the Michigan law in this an outlying law then? Not followed by anybody in any other jurisdictions? Well the the issue before the court is how the Michigan Supreme Court would rule. The question Judge Griffin's asking is is there any other state that implies a similar practice that uses balance of equities in the life insurance context? I don't know. Well you probably should know. I mean you're the you're the appellant and you can't cite us any authority anywhere. I rely supportive in supporting your position as to a life insurance contract. I mean that's what you're telling me. Well I mean there's if you're asking me whether or not the whether or not I mean let me back up. I don't know what other states do. I follow. You actually should know. That's okay. Maybe I'll ask the other side. Well he's gonna say no. I mean let's assume. No we would like to know. Okay I don't I haven't seen any. Can I ask you a question in a different way? Same same vein of questions but it seems to me the way I think of auto insurance is let's say you commit fraud to get auto insurance. You don't know who the beneficiary is gonna be when you get in an accident. So you get in an accident. It makes sense to balance the equities because you have two innocent parties. You have a victim of an accident who had no idea you were committing fraud and you have an insurance company that for better or worse we hold accountable for that. You know even though you may have committed fraud and I would argue that makes sense under Michigan law because the insurance company can do some investigation whereas the innocent third party can't. Here it seems to me in the life insurance context just to give you a hypothetical someone's gonna commit suicide. They get a life insurance policy. They name their kids. They then commit suicide. Should their kids, why should we ever balance the equities in that scenario? In other words in auto insurance it makes perfect sense. In life insurance you actually have someone you're trying to benefit and your fraud is actively benefiting which doesn't happen in the auto insurance context. Isn't that a good reason to distinguish life from auto? Actually it does happen in the auto context because an insured can make a misrepresentation on an application for insurance and there could be multiple other parties that are insured under the contract who didn't participate in it. The innocent but you're not gonna I mean in theory if you get an accident intentionally it's a lot different than for example committing suicide right? Well I suppose that the that would be addressed by the markman factors. So each individual case would be considered on its own merits. Your point is no matter what any insurance contract you go to the balance of equities even though in a life insurance context you could literally commit fraud to benefit a specific person. You can do that in on any policy that could potentially benefit a third party because there's additional insureds. There's insureds that are defined by the insurance policy that didn't sign. Right but you're not intentionally getting in an accident in theory unless you're committing multiple crimes. Well I can tell you that in this particular case Ms. Ferguson didn't intentionally kill herself and I'm not sure how often that happens but I can tell you that the interests of her children and her mother who did not participate in the fraud could are still relevant and should be considered when the insurance company is asking to obtain an equitable remedy. Is your argument limited to the insurance context? No. Okay so I'll give you a hypothetical. A person who wants to start a small business goes to the bank and makes a contract for a loan, commits fraud in the loan application. Down the road the bank realizes the fraud, wants to rescind the contract but by then the person's used the proceeds of the loan to fund employees and suppliers and things like that. In your view you would have to balance the equities of the employees of the company and other innocent third parties before you could actually enforce the plain terms of the loan contract? Let me answer that question by talking about the distinction between rescission which is a remedy and fraud which is essentially a wrongful act. So when a person enters into a contract, for instance your contract, they can put whatever provision they want in it. They can put a provision in there that says if you breach the contract we sue you for damages or we can take other action. And then in the event that person actually does breach that contract, the non-breaching party can then go to court and they can bring an action in law where they recover monetary damages or they can bring an action in equity to rescind the contract. If they go to court and they seek an equitable remedy then they have to go through the equitable process and that process requires a determination of fairness. When the face of the contract as here grants the rescission right when fraud is discovered, you would say in any contract like that in Michigan a court has to decide whether it thinks it's fair to enforce the contract in the face of potential harm to any number of innocent third parties who would like to see the contract enforced. Is that the argument? I don't say that. Michigan Supreme Court says that. Michigan Supreme Court says that. Other cases too? Bozzi is the one that established this rule after it rejected the innocent third party doctrine. If that's right, I'm not sure how Hartson could have come out the way that it did in allowing contract based, basically per se rescission as to the optional coverage portion of the policy. In your view, I would have thought you would also have had to balance the equities but Hartson didn't do that. What I'm saying is that if a party, an insurance company, is going to seek equitable remedies they have to go through the equitable process that is established by the highest court in the state of Michigan and that court has said that rescission is equitable and this is the process you go through. If they didn't reinstate the policy, would they win without, we wouldn't have to do any of this analysis? If the insurance company didn't? Yeah, because they reinstated it after her death, correct? Am I right about that? Well, she had paid for it and they reinstated it because by the time she had essentially submitted it and paid for it, she had died. The answer to my question is yes, they reinstated it after her death, correct? Yes. Okay. Had they not reinstated it, would we go through any of this? This is just a curious question. I don't know. It depends on the circumstances because I would have had to, she would have had to hire an attorney and the attorney would have to look at whether or not they rightfully canceled the contract. Is that a balance of equities too? Well, it depends. I mean, if I had filed a motion for breach of contract, which is what I did here, and they answered with the defense of, well, rescission and we rescinded and therefore it invokes the equitable powers of the court. But if they said no, no acceptance, is that the end of it? That's what I'm trying to get at. She made an offer, she sent the money, they say, no, we didn't accept. Sure. If what you're getting at is that, then that proves the point that if the insurance company wouldn't have entered into the contract if they had known about this information, I'm not, you know, the information that she had driving violations, is that what you're getting at? And that the fact that they essentially reinstated the contract and then learned afterwards that they wouldn't have? If that's what you're getting at, I don't dispute that she had made a misrepresentation. I don't dispute that it was material. What I'm saying is that when you seek an equitable remedy, you have to go through the equitable process that's imposed by the highest court in the state of Michigan. I mean, even though it's in the contract and we're dealing with contract law, you say, well, even though it's a contract case, we're in the equity realm, I guess, which I think is a little odd. Okay. Any further questions at this time? You'll have your three minutes rebuttal. You could use it now if you want, or you can... No, no, I'll hold it. Okay. Okay. Thank you. Thank you, counsel. All right. Let's hear from the Appellee. Good morning. Good morning, Your Honors. Mark Titici for the Appellee Bright House. Your Honors, I do want to take a step back. From our perspective, this case is controlled by a fundamental principle of Michigan law, which is that contracts must be enforced according to their written terms. That's the Rory case from the Michigan Supreme Court. In that case, the question was an insurance contract, and could the parties vary the statute of limitations, it was six years for contract disputes, down to one year by contract? And the court said, yes, they could. Now, the Michigan Supreme Court relied on that same principle again in the Mimic decision. It's in footnote 16 of that decision. It said that at common law, historically, the parties could vary the requirements for invoking rescission. It could define what fraud was that would trigger rescission and how that would operate in a contract, and said that that rule isn't available in that particular case because there's a contravening statute, the No Fault Act. But it reaffirmed the general rule that when there's not a statute, when there's not mandatory coverage, parties are free to contract and prescribe whatever remedies and whatever conditions on their relationship that they want. I thought Bozzi said mandatory and optional coverage. I'm sorry, what? I thought Bozzi, the Bozzi case, said mandatory and optional coverage. Am I wrong? It's covered by the balancing? Yeah. That is wrong, Your Honor. Yes, it's very clear, I think, from the... I mean, they said there's no controlling distinction between mandatory and optional coverage, right, at page 28 of that opinion? They did, Your Honor, but that was in response to the argument that the No Fault Act, by prescribing mandatory coverage, had essentially precluded the insurer, in that case, from asserting the common law defense of fraud. And so they said that there's no distinction between mandatory and optional coverage. But in that context, in saying they're both premised on the existence of a valid contract, if that contract was a result of fraud, regardless of whether it's for mandatory or optional. Like, if you look at the Markman factors, it seems to me there's no... When I go through the Markman factors, there's no distinction, in my mind, between mandatory and optional, right? So why wouldn't we just apply them across the board? I think, Your Honor, because we just... You wouldn't get there. I think because of this fundamental rule we've talked about in Michigan, where if... I think, Your Honor, if we are talking about a world... Let me back up. A world where there's no contractual provision, you might, where you have just default rules under rescission, contractual... If there's a contract, a breach of contract action, there's a rescission remedy sought, and there's no contractual provision that specifies rescission as a remedy, like we have here. Maybe you would find yourself in that world. But here, the question is sort of multi layered. Where you have that provision that doesn't provide for that, where it just gives a right to rescission, can the parties freely contract for that result? The answer is yes, unless you're in this world, which we saw in Mimic, where it's trumped by a specific statutory command to provide coverage, and you can't vitiate that. The court was very clear, you can't vitiate that by expanding the defenses or the remedies that would allow you to go outside of that rule. And that's the distinction between the Rory case and Mimic. Rory is an optional coverage case, that's under insured, uninsured motorist coverage. You can modify the statute of limitations down to one year, no problem there. Mimic, you have mandatory coverage, and the court said you can't enforce a contractual anti fraud provision there, but that's because, again, the Supreme Court of Michigan has said, you can't do that in mandatory coverage scenarios, but at common law, in optional coverage cases, you can. Can we go back to the first questions we were asking your friend, which is, is there a distinction that we should draw between life insurance being, I guess, optional, as you would say, and auto insurance when it's mandatory? Is that the distinction we should draw, or is there something else? Is there some public policy reason or other reason Michigan would treat them differently, absent one being optional and one being mandatory? I think there's another reason, too. I think, sort of think of concentric circles here. On the one level, I don't think you ever get to, is there an innocent third party here? Because you just enforce this contract according to its terms. I think that's our sort of starting point here. But if you say that we are in a world where you would... Can I just push back on that? Yes, of course. Please. So it seems to me that... So we were talking about how you could commit fraud if you're the plaintiff and then benefit someone in the life insurance context. The flip side to that is it gives you no incentive to investigate. In other words, DUIs could have been revealed to the insurance company by a simple background check that a lot of us go through for anything these days, right? You sign up, these companies run a quick background. Why not put that onus on the insurance company versus someone, a child, a six year old child that has no idea? I think because, Your Honor, that incentive's already there because under this policy, and I believe it's statutory in Michigan, there's a two year contestability period. So we can only look back and investigate the representations made for the first two years. So what often happens is... Explain that to me. I'm sorry. What do you mean two years? You can't look at a DUI that occurred four years ago? No, I'm sorry. For only two years after the policy comes into force can we investigate? Right. So we have that period where, like this, the policy is issued or in this case reinstated, subject to the contestability investigation, and then oftentimes that investigation happens. But only for those first two years, if we sleep on our rights and we don't do it, the insurance company in that situation is stuck. They cannot go back if 10 years later in a life insurance context, this person passes away, and then later it comes to light that there were, in fact, misrepresentations made. You've forfeited your opportunity to contest it. Correct. So any fraud in the contract is waived after two years? Two years, yes. You said that was statutory? I believe it is, Your Honor. It's in the policy that was as issued. Yes. That two year window, your understanding, would have implied to any reinstatement decision? It was in the reinstatement application as well, yes, that there was a two year contestability period there as well, which is why it was able to be conditionally approved subject to that standard investigation. Yes. So if there had been no lapse, if there had been payment all the way through, we would not have been able to go back and say, well, there was a misstatement made at the time of the policy back in 2011, whenever it was first put in place. So the contract which reflects the statute is kind of building in principles that your opposing counsel is advancing insofar as it's protecting people that are beneficiaries of the contract and might rely on coverage beyond kind of the two year window. Yes, Your Honor. And to get back to your... Oh, I'm sorry, go ahead. No, I was just gonna ask you, so have they essentially codified the first markman factor? Is that what happened? I'm just curious more than anything. The first markman factor is the obligation of the insurance company to investigate. I don't know. This is the chicken and the egg, Your Honor. Historically, I don't know which came first here, but I do agree that there's some overlap in the principles between the two. You can go back to answering. Sorry. No. So is there a distinction between sort of... Is there an innocent third party here? And I think that what we just talked about is one distinction between the life insurance and some of these casualty or auto insurance cases. But yes, I do think that there's a distinction as Your Honor was pointing out earlier. You wouldn't have someone committing fraud or making a misrepresentation for the purpose of benefiting a third party in the auto insurance context like you would here. But I think maybe a more fundamental... Wait, can I interrupt you there? Oh, sure. Yeah, sorry. Go ahead. No, because your friend says, well, wait a minute. When I get my insurance contract, auto insurance, I get the... My kids benefit from it, right? They're all then on the insurance contract. They benefit. And so if I'm committing fraud to get a lower rate, because if my kid applies, they're gonna get a much higher rate alone, but in the collective of the family, they get a lower rate. Aren't you intending to benefit them? And if they get in an accident, they would still get to the balance of equities? I hear what you're saying, Your Honor, but I do think it's a different context because there... Again, that is something that is required by statute. That coverage for relatives who live in the same home is a statutory command under the No Fault Act. So again, that's where you have this... The legislature has come in and sort of trumped and said, well, we're going to make sure that these other people are covered by statute. So I don't think it's apples to apples. I realize these are all interconnected, but it goes back to that distinction between optional and mandatory. Do you think that's the critical distinction? I do, Your Honor, but I also agree that there is a distinction when it comes to the third party analysis, because when you have those auto insurance cases where this all comes from, you do have two injured parties. The innocent third party, quote unquote, is independently injured. They are someone who is the other driver in an accident. They're a passenger in a car. They have an independent physical, but also legal injury. Here, there isn't one. The only insurable loss, the only events, the only casualty that was covered is the death of the decedent here, of the insured party. It's like if you had that one party car accident where someone dies and then their survivors are attempting to recover the benefit under their policy, their survivor benefit, the insurance company could rescind that and their heirs couldn't come in and say, well, we're innocent third parties. It's no, you committed fraud. You fraudulently procured a policy, died. But then there aren't any innocent third parties in the sense that the statute and the case law uses them because there aren't people who are independently injured that, again, the law would have you cover. Can I ask the last question I asked your friend? I'm just curious. Why did you reinstate the policy? Was there some reason you had to? Because without the reinstatement, it seems to me we wouldn't even be here. No, Your Honor. I mean, there actually was an ongoing, the actual reinstatement application didn't even pay the full premium that was required. This was just the insurance company trying to do the right thing, I think, in that situation. And so what hadn't even received full premium, they had an outstanding letter to the decedent requesting payment of the remaining balance needed to pay the full year's premium, but then agreed subject to the contestability investigation to say, okay, we'll put it back in force and then we'll do our investigation and then we'll see what happens. And that's what happened here. But no, there's no... I'm not aware of any legal requirement. The correspondence and the record reflects just a decision to put it back in place in this circumstance. Your Honor, if there are no more questions, I'll submit. Any further questions? No, thank you. All right. Thank you, counsel. Three minutes rebuttal. Thank you. I'll go backwards. So actually, the reinstatement process was required under the policy itself. So the policy had a reinstatement provision, so counsel was incorrect in his statement that it was the insurance company trying to do the right thing. They were just following the terms of the contract when they... But they reinstated the policy prior to all the prerequisites for reinstatement being met. Is that fair? They reinstated it... No, she had... They reinstated it subject to their review, but she had submitted everything, the application and paid the premium before she... Paid the full premium? She paid the full premium. She did, 100%. In fact, it's... I don't know where that comes from. She paid the full premium. There was absolutely... In fact, they tried to return it when they tried to rescind. So both of those statements were incorrect. It's also untrue that counsel had argued the auto policy would not potentially result in benefits to survivors, because every auto policy in Michigan has survivor benefits. So in the event that a person dies, the survivor is entitled to recover under those policies. So that's an incorrect statement. With respect to the distinction between mandatory and optional, the Michigan Supreme Court's very clear that there's no distinction with respect to the equitable balancing process in order to obtain rescission. And you're getting that from... Fossey. Okay, so as I read that passage, that was in the context of deciding whether Triton had abrogated the innocent third party rule. And the argument was, well, maybe it shouldn't be read to have abrogated it with respect to mandatory coverage because of the statutory imperative to ensure innocent third parties are covered. Am I misreading that passage or you read it more broadly? Well, I think that the No Fault Act... I think I agree with you, because the No Fault Act has mandatory coverages and it has optional coverages. So every single time you have a question with respect to those coverages, the Michigan Supreme Court has said basically, where there's mandatory coverage, the statute controls in the event that it conflicts with the policy. Where there's optional coverage, the common law and the policy control and the statute is essentially not applicable. And the whole point of what we're standing here today is to say that equity is based on the common law. And the Michigan Supreme Court is the highest court in the state of Michigan, and they established that in order to rescind a policy, an insurance company has to go through this equitable balancing test in the event there's an innocent third party. I would also point out that the shortening of the statute of limitations case that's cited by counsel is not an equitable case. That's actually just a contract provision that was being enforced. There was no request that the policy be rescinded. So there was no equitable relief requested. So it's completely irrelevant. Can I just ask one quick question? So I'm looking at Exhibit 5 to their motion for summary judgment. It's a letter saying she did not pay the full premium. Did she subsequently pay it? Yes. Okay. She was not. The insurance company was paid in full, so that's not disputed. However, it's also not disputed that she made a misrepresentation. I'm not here to dispute that, but I can tell you that, yes, she paid it ultimately. All right. Thank you. For your argument, the case will be submitted.